## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Martavis Shawn Demar James,<br><br>        Defendant. | Case No. 18-cr-216 (SRN/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Alan A. Slaughter, Jr., United States Attorney's Office, Minneapolis, Minnesota, for Plaintiff.

Peter B. Wold, Wold Morrison Law, Minneapolis, Minnesota, for Defendant.

_____

HILDY BOWBEER, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendant Martavis Shawn Demar James's ("James") Motion to Suppress Search and Seizure of Items [Doc. No. 18]. The case was referred for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. No hearing was held, and the Court took these motions under advisement on October 30, 2018. *See* (Oct. 30, 2018 Order [Doc. No. 23] (cancelling the motion hearing on the basis of representations made by the parties). For the reasons stated below, the Court recommends that James's Motion to Suppress be denied.

## I.    BACKGROUND

On September 12, 2018, James was indicted on five counts of Interference with Commerce by Robbery and one count of Attempted Interference with Commerce by Robbery.  (Indictment [Doc. No. 1].)  The indictment was in connection with robberies or attempted robberies of at least ten businesses in the Minneapolis and Saint Paul metropolitan area committed by the same individual between March and June 2018. (Government's Resp. to Def.'s Suppression Mot., "Mem. in Opp'n" [Doc. No. 20 at 1].)

### A.    The Robberies and James's Arrest

From March 2018 to June 2018, there were roughly ten robberies of CVS, Big Lots, Walgreens, and Dollar Tree store locations across the Twin Cities.  *See* (Mem. in Opp'n Ex. 1 [Doc. No. 20-1 at 4–5]; Mem. in Opp'n Ex. 2 [Doc. No. 20-2 at 4–5]; Mem. in Opp'n Ex 3 [Doc. No. 20-3 at 4–5].)  The Government alleges the perpetrator of each robbery utilized the same *modus operandi* in the commission of these crimes.  (Ex. 1 at 4–5; Ex. 2 at 4–5; Ex. 3 at 4–5.)  The male perpetrator would "case" the store by loitering in the parking lot of the establishment for roughly ten minutes before entering the store wearing a black jacket with the hood up, a black face mask covering the bottom half of his face, black gloves, and brandishing a black handgun.  (Ex. 1 at 4; Ex. 3 at 4.)  The perpetrator would approach an employee and demand to be led to the safe in the business office where he would prompt the employee to place bills into a red and black duffel bag, then he would order the employees to lie on the floor, and exit the store on foot.  (Ex. 1 at 4–5; Ex. 2 at 4–5; Ex. 3 at 4–5.)  Each robbery occurred in the last thirty minutes of the store's business hours.  (Ex. 1 at 4–5; Ex. 2 at 4–5; Ex. 3 at 4–5.)

Unable to identify the perpetrator of these robberies through surveillance videos at these locations, law enforcement agents applied for search warrants for cellular tower data in the vicinity to determine whether "a particular cellular phone number (ostensibly held by the robber) could be identified during the time frames of each of the respective robberies." (Mem. in Opp'n at 2); *see also* (Ex. 1; Ex. 2; Ex. 3.) The search warrants were reviewed and issued by three different state court judges. *See* (Ex. 1; Ex. 2; Ex. 3.)

Analysis of the cellular information revealed that the same cellphone number was near at least five of the six robbery locations during the time of the robberies. (Mem. in Opp'n at 2.) On this basis, law enforcement agents were granted a search warrant for the use of an active GPS "ping" geolocation data for James's cellphone and the use of a pen register to monitor James's movements. (*Id.* at 3); *see also* (Mem. in Opp'n Ex. 5 [Doc. No. 20-5].) On June 1, 2018, agents followed James to a CVS store located in Eden Prairie, Minnesota where they observed him casing and approaching the store while wearing the same or similar black clothing, black gloves, and mask seen in the surveillance video. (Mem. in Opp'n at 3.) James, however, was unable to enter the store; the doors had been locked by law enforcement and CVS employees, thwarting James's robbery of this location. (*Id.*) James walked back to his vehicle and, once inside, he was arrested. (*Id.*)

As part of a search incident to his arrest, law enforcement agents searched the main cabin of the vehicle and located a black and red duffel bag in the passenger seat. The duffel bag appeared to be the same one used in the commission of the other robberies and contained a bank deposit bag that was taken during the commission of one of the

CVS robberies.  (*Id.*)  Law enforcement also found a handgun under the driver's seat and

James's cellphone in the vehicle's center console.  (*Id.*)

### B.    Challenged Warrants

James moves to suppress evidence obtained as a result of searches conducted

pursuant to nine warrants issued by Anoka and Hennepin County District Courts.  (Def.'s

Mot. to Suppress [Doc. No. 18 at 1].)  James primarily challenges the first three warrants,

each of which authorized the collection of cellular tower dumps and call detail record

information from Verizon Wireless, AT&T Mobility, Sprint Corporation, and T-Mobile

USA, of all cellular devices utilizing the cell site/sector near the specified areas for a

variety of dates, times, and locations correlated with the robberies.  (*Id.* at 2.)  James

argues these search warrants were exploratory searches and lacked definiteness and the

necessary probable cause.  (*Id.* at 2–3.)

The first set of robberies occurred on March 21, 2018, March 29, 2018, and April

6, 2018.  (Ex. 1 at 4–5.)  On April 11, 2018, Minneapolis Police Sergeant Jeffrey Waite

("Sgt. Waite") applied for and received the first warrant authorizing cellular tower dumps

and call detail record information of all cellular devices near the first three robbery

locations.  (Ex. 1 at 1–2.)  The search warrants were constrained to an approximately

ninety-minute time frame on the date of each robbery.  (Ex. 1 at 1–2.)

Subsequently, three more robberies with almost identical details including the

perpetrator's attire, time of robbery, and method of robbery occurred on April 11, 2018,

April 26, 2018, and May 4, 2018.  (Ex. 2 at 4–5.)  Two warrants were applied for and

granted on May 8, 2018, authorizing the release of the same type of information from the

4

same carriers called for by the first search warrant.  (Ex. 2; Ex. 3.)  These search warrants were limited to cellular towers near the alleged criminal activity for a seventy-five-minute period on the days of the robberies.  (Def.'s Mot. to Suppress Ex. 2[Doc. No. 20–2]; Def.'s Mot. to Suppress Ex. 3 [Doc. No. 20–3].)

The fourth warrant requested the historical call detail records between January 1, 2018, and May 19, 2018, and GPS location information from AT&T Mobility for a specific phone number later determined to belong to James's cellphone.  (Def.'s Mot. to Suppress Ex. 4 [Doc. No. 20–4 at 1].)  In support of the warrant, Sgt. Waite stated that the cellular information gathered from the previous warrants was analyzed by Federal Bureau of Investigations Agent James Berni and that he identified one phone number that was present at five of the six robberies.  (*Id.* at 5.)  The phone number identified by Agent James Berni was the only telephone number requested in the warrant.  (*Id*. at 1.)  Facts about the previous robberies and pending investigation were also included in support of the warrant.  (*Id.* at 3–6.)  The warrant was granted on May 20, 2018.

On June 3, 2018, the fifth warrant in dispute was granted.  (Def.'s Mot. to Suppress Ex. 6 [Doc. No. 20–6].)  The warrant authorized the search of the motor vehicle that James had operated on the evening of his arrest.  (*Id.*)  The sixth warrant was granted on June 4, 2018, and authorized the search of James' residence.  (Def.'s Mot. to Suppress Ex. 7 [Doc. No. 20–7].)

The seventh warrant was granted on June 11, 2018, and allowed law enforcement to search a cellphone recovered during James' arrest.  (Def.'s Mot. to Suppress Ex. 8 [Doc. No. 20–8].)  The scope of the search included call history, text messages, images

5

and videos, internet history, and GPS location, among other types of data. (*Id.*) The

eighth warrant was issued on June 12, 2018, authorizing a biological sample to be taken

from James for DNA analysis. (Def.'s Mot. to Suppress Ex. 9 [Doc. No. 20–9].) The last

search warrant in dispute was issued on June 20, 2018, and authorized a search of a motor

vehicle located at James' residence which James had been seen driving without

passengers on May 27, 2018, May 30, 2018, and May 31, 2018. (Def.'s Mot. to Suppress

Ex. 10 [Doc. No. 20–10 at 4].)

## II.    DISCUSSION

### A.    Legal Standard

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV. In order to give power to the Fourth Amendment, the Supreme

Court has established "an exclusionary rule that, when applicable, forbids the use of

improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139

(2009). "[T]his judicially created rule is designed to safeguard Fourth Amendment rights

generally through its deterrent effect." *Id.* at 139–40 (internal quotation marks omitted).

Stated differently, "the exclusionary rule serves to deter deliberate, reckless, or grossly

negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at

144.

When challenging a probable cause determination, "a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a *fair probability* that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (emphasis added). "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (internal quotation marks omitted) (omission in original). Ultimately, probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Even in the presence of probable cause, a search may also violate the Fourth Amendment if conducted pursuant to a search warrant that is not sufficiently definite. *See, e.g.*, *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Stanford v. Texas*, 379 U.S. 476, 485–86 (1965); *United States v. Kail*, 804 F.2d 441, 444–45 (8th Cir. 2011); *United States v. Fredrickson*, 846 F.2d 517, 519 (8th Cir. 1988).

"The degree of specificity required in applying the particularity requirement is flexible and may vary depending on the circumstances and the types of items involved." *Kail*, 804 F.2d at 445 (internal quotation marks omitted). In other words, the particularity requirement is met if the description of things being sought is "as specific as the circumstances and nature of activity under investigation permit." *United States v.*

7

*Martin*, 866 F.2d 972, 977 (8th Cir. 1989) (internal quotation marks omitted); *see also*

*Garrison*, 480 U.S. at 84 (stating that the specificity requirement "ensures that the search

will be carefully tailored to its justifications").

All that said, search warrants are presumptively valid. *See Franks v. Delaware*,

438 U.S. 154, 171 (1978); *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005).

**B.    Analysis**

The Government first argues that James does not have Fourth Amendment

standing to bring his motion because he did not have a reasonable expectation of privacy

as to the cellular tower data at issue. *See* (Mem. in Opp'n at 5, 6–7.)  Relying on the

recent decision of the United States Supreme Court in *Carpenter v. United States*, 138 S.

Ct. 2206 (2018), James argues that there is a reasonable expectation of privacy in this

type of data and he therefore has standing to move to suppress the results derived from

search warrants that he contends lacked probable cause and were not sufficiently

particular, in support. *See* (Def.'s Mot. to Suppress at 2).  The Court notes that the

decision in *Carpenter* was expressly limited to the individual cell-site location

information at issue in that case, which allowed the government to create a

"comprehensive record of the person's movements."  The Court concluded that a person

has a reasonable expectation of privacy "in the whole of their physical movements."

138 S. Ct. at 2216–17.  But the Court explicitly declined to reach the issue of whether

there was also a reasonable expectation of privacy in the type of data sought here, which

would not provide the "comprehensive record" of an individual's movements that was of

concern to the Court in *Carpenter*. *Id.* at 2220. Thus, the standing issue raised by the government remains unresolved.

The Court need not wade into the murky waters of standing to resolve this motion in this case, however, because even assuming that James had a reasonable expectation of privacy in the cellular tower data that was the subject of the warrants and therefore has Fourth Amendment standing to bring his challenge to the search warrants for that data, his motion fails because the search warrants for the cellular tower data are supported by probable cause and are sufficiently definite. Furthermore, application of the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), would provide an alternative basis to defeat James's motion. Because the cellular tower data searches were lawful and the results of those searches should not be suppressed, James's arguments regarding the other challenged search warrants premised on the argument that the evidence thus seized was "fruit of the poisonous tree" necessarily fail. The Court addresses each in turn.

### 1.    Probable Cause and Particularity

After careful review of the four-corners of the search warrant affidavits upon which the three cellular tower data warrants were based, the Court is satisfied that there was a substantial basis for each of the three issuing judges to conclude that probable cause existed. James argues that the warrants lacked probable cause because the affiant stated that "it is unknown whether a phone was used by the suspect before or after the robbery" and this statement eviscerated any potential nexus between the information sought and the alleged criminal activity. *See* (Def.'s Mot. to Suppress at 2; *see also* Ex. 1

9

at 5; Ex. 2 at 5; Ex. 3 at 5.)  This argument is unavailing because it ignores other aspects of the affidavit.  For example, the affiant stated that he "is aware through training and experience that individuals frequently call and/or text message other co-conspirators regarding criminal activity during and/or after an event has occurred."  (Ex. 1 at 5; Ex. 2 at 5; Ex. 3 at 5.)  The affiant also alerted the reviewing judges to the ubiquitous nature of cellular phones.  *See* (Ex. 1 at 5; Ex. 2 at 5; Ex. 3 at 5.) (stating the "affiant is also aware that a high percentage of the population regularly use and carry a cellular phone with them during their day to day activities").  Furthermore, the affiant pointed out, "when cell phones make or receive a call, SMS, or use data, the cell phone will register with a cellular tower in the geographical area of the crime."  *Id*.  Under the circumstances, there was a fair probability that data from the cellular towers in the area of the crimes would include cellular data related to the individual responsible for the robberies being investigated, and that by cross-referencing the data, that individual could be identified. Thus, in light of the information contained within the affidavits, the Court cannot conclude the issuing judges lacked a substantial basis to determine that probable cause existed to issue the warrants.  *Cf. LaMorie*, 100 F.3d at 552.

The particularity requirement is also met for the challenged search warrants. James's argument that the warrant applications were indefinite because "[t]he three warrants allowed law enforcement to identify the location of hundreds if not thousands of cell phone users on specific days during specific time frames" (Def.'s Mot. to Suppress at 2), does not take into consideration either the circumstances or the nature of the activity under investigation.  Importantly, the warrant applications seek information that is

constrained—both geographically and temporally—to the robberies under investigation. *See* (Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1.)  These constraints are justified by the nature of the investigation: multiple robberies in different geographic areas; carried out by someone wearing the same clothing; and employing the same *modus operandi*.  James himself acknowledges the presence of these constraints when arguing that the warrants necessarily encompass data "on *specific* days during *specific* time frames."  (Def.'s Mot. to Suppress at 2.) (emphasis added).  The search warrants were not directed at general searches of the data from those towers, nor did they seek data from towers not geographically relevant to the locations of the robberies during the pertinent time periods, but were instead carefully tailored to the justification of the search—to identify a cellular phone used either in connection with the robberies or by the individual responsible for each of the robberies occurring at specific places and times matching the same *modus operandi*.  *Cf. Garrison*, 480 U.S. at 84.

Because the Court concludes that the search warrants for the cellular tower data were supported by probable cause and were sufficiently particular as to the items being sought, the Court recommends that James's Motion to Suppress be denied.

### 2.    *Leon* **Good-Faith Exception**

Even if the Court could not recommend denying James's Motion to Suppress on a four-corners review of the search warrant affidavits, the Court would nevertheless recommend that his motion be denied under the *Leon* good-faith exception.  "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the

judge's determination that there was probable cause to issue the warrant." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (internal quotation marks omitted). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).  That said, *Leon* does not apply "when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* at 547 (internal quotation marks omitted). The Supreme Court has opined "that the threshold for establishing [that *Leon* does not apply] is a high one, and it should be." *Id.*

James argues that *Leon* does not apply because the search warrant applications are too broad generally, do not connect a suspect to the alleged robbery, and otherwise "failed to draw a connection of illegal activity to a specific cell phone."  (Def.'s Mot. to Suppress at 1–2, 4.)  Thus, James argues that no reasonable law enforcement officer could conclude that the challenged warrants were valid.  For the reasons stated above, however, the Court is not persuaded by this argument.  Critically, there is nothing to suggest that the search warrant affidavits objectively lack sufficient probable cause nor is it obvious that the search warrants themselves are unconstitutionally indefinite.  On the contrary, not just one but three judges reviewed the applications and concluded it was appropriate to grant the search warrants requested.

Additionally, in each of the affidavits underlying the challenged search warrants, the affiant pointed out that "other Law Enforcement officers . . . have used this method to

develop leads in . . . robbery and assault cases where the specific M.O. has matched."
(Ex. 2 at 6; Ex. 3 at 6.)  That is, the search warrant application suggests that other
reasonable law enforcement officers have concluded this type of search warrant was
lawful.  Likewise, and undermining James's arguments to the contrary, other courts have
also concluded that there is nothing *per se* violative of the Fourth Amendment about
seeking cellular tower data "dumps" for similar purposes to those at issue here.  *See, e.g.*,
*In re Application of the U.S.A. for an Order Pursuant to 18 U.S.C. 2703(c), 2703(d)*
*Directing AT & T, Sprint/Nextel, T-Mobile, Metro PCS, Verizon Wireless*, 42 F. Supp. 3d
511, 515–16 (S.D.N.Y. 2014)[1]; *In re Search of Cellular Telephone Towers*, 945 F. Supp.
2d 769, 771 (S.D. Tex. 2013).

James therefore cannot demonstrate that no reasonable officer would believe these
warrants were valid.  *Cf. Messerschmidt*, 565 U.S. at 546.  Consequently, even if it were
true that the search warrants should not have issued because the applications lacked
probable cause or sufficient specificity, the Court would nevertheless conclude that the
*Leon* good faith-exception would apply because it would have been reasonable for the
law enforcement officers to assume that the warrants were valid.  Consequently,

---

[1]  In this case, the Honorable Jay Francis, Magistrate Judge in the Southern District of
New York, concluded, after a lengthy analysis that took into account amicus briefing on
the Fourth Amendment issues, that the government was not required to get a search
warrant but rather could seek historical cell site data similar to that sought here through
an order pursuant to the Stored Communications Act (SCA), 18 U.S.C. §§ 2703(c)(1),
(d).  However, Judge Francis required the government to provide further justification for
the connection between the investigation and its request for cellular tower data spanning
a 4½ hour time period.  In the instant case, of course, the government did not proceed
under the SCA but rather sought search warrants for the data.

suppression would not be warranted under these circumstances, and this provides an additional independent basis to deny James's motion. *Accord Messerschmidt*, 565 U.S. at 555–56; *Leon*, 468 U.S. at 922.

### 3.    Remaining Warrants

James challenges the remaining warrants on the ground that the results of these searches and seizures are tainted fruit of the unlawful cellular tower data searches. *See* (Def.'s Mot. to Suppress at 4.)  Suppressing evidence as "'fruit of the poisonous tree' assumes the existence of a constitutional violation." *Oregon v. Elstad*, 470 U.S. 298, 305 (1985).  Having concluded above that James's Fourth Amendment rights were not violated in the procurement of the three cellular tower search warrants or in the manner in which the searches were executed, suppression of evidence under the remaining search warrants is also not warranted. *See, e.g.*, *United States v. Bacote*, No. 05-cr-234 (MJD/SRN), 2006 WL 1579998, at *7 (D. Minn. June 2, 2006) (Davis, J.).  As a result, James's Motion to Suppress should be denied.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Martavis Shawn Demar James's Motion to Suppress Search and Seizure of Items [Doc. No. 18] be **DENIED**.


Dated: November 26, 2018           *s/ Hildy Bowbeer*
                                    HILDY BOWBEER
                                    United States Magistrate Judge


14

## Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.