# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Martavis Shawn Demar James,<br><br>Defendant. | Case No. 18-cr-216 (SRN/HB)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

Alan A. Slaughter, Jr., United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Peter B. Wold, Wold Morrison Law, 247 3rd Avenue South, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This case is before the Court on Defendant's objections ("Objections") [Doc. No. 28] to United States Magistrate Judge Hildy Bowbeer's November 26, 2018 Report and Recommendation ("R&R") [Doc. No. 26] recommending that this Court deny Defendant's Motion to Suppress Search and Seizure of Items [Doc. No. 18]. For the reasons set forth below, the Court overrules Plaintiff's Objections, adopts the R&R in full, and denies Defendant's Motion to Suppress.

## I. Background

### A. Factual Background

On September 12, 2018, Defendant was indicted on five counts of Interference

with Commerce by Robbery and one count of Attempted Interference with Commerce by Robbery. (Indictment [Doc. No. 1].) The indictment concerned robberies or attempted robberies of at least ten businesses in the Minneapolis and Saint Paul metropolitan area committed by the same individual between March and June 2018. (Govt.'s Resp. to Def.'s Mot. to Suppress ("Govt.'s Mot. in Opp'n") [Doc. No. 20] at 1.)

As law enforcement agents were unable to identify the perpetrator of these robberies through surveillance videos at these locations, they applied for search warrants for cellular tower data in the vicinity to determine whether "a particular cellular phone number (ostensibly held by the robber) could be identified during the time frames of each of the respective robberies." (Govt.'s Mot. in Opp'n at 2).

Analysis of the cellular information revealed that the same cellphone number was near at least five of the six robbery locations during the time of the robberies. (*Id.*) On this basis, law enforcement agents were granted a search warrant for the use of active GPS "ping" geolocation data for Defendant's cellphone and the use of a pen register to monitor Defendant's movements. (*Id*. at 3.) On June 1, 2018, agents followed Defendant to a CVS store located in Eden Prairie, Minnesota where they observed him casing and approaching the store while wearing the same or similar black clothing, black gloves, and mask seen in the surveillance video. (*Id.*) Defendant, however, was unable to enter the store as the doors had been locked by law enforcement. (*Id.*) Defendant walked back to his vehicle and, once inside, he was arrested. (*Id.*)

As part of a search incident to his arrest, law enforcement agents searched the main cabin of the vehicle and located a black and red duffel bag in the passenger seat.

2

(*Id.*) The duffel bag appeared to be the same one used in the commission of the other robberies and contained a bank deposit bag that was taken during the commission of one of the four CVS robberies. (*Id.* at 3–4.) Law enforcement also found a handgun under the driver's seat and Defendant's cellphone in the vehicle's center console. (*Id.* at 4.)

### B. Procedural Background

On October 10, 2018, Defendant moved to suppress evidence obtained as a result of searches conducted pursuant to the nine search warrants issued by Anoka and Hennepin County District Courts. (Def.'s Mot. to Suppress at 1.) The search warrants were reviewed and issued by three different state court judges. (Govt.'s Mot. in Opp'n, Ex. 1; Ex. 2; Ex. 3.)

Defendant challenges the first three warrants, each of which authorized the collection of cellular tower data and call detail record information of all cellular devices utilizing the cell site/sector near the specified areas for a variety of dates, times, and locations correlated with the robberies. (Def.'s Mot. to Suppress at 2.) The search warrants were constrained to an approximately ninety-minute time frame on the date of each robbery. (*Id.*) Defendant argues these search warrants were exploratory searches and lacked definiteness and the necessary probable cause. (*Id.* at 2–3.)

Subsequently, three more robberies occurred on April 11, 2018, April 26, 2018, and May 4, 2018 utilizing the same *modus operandi* as the first three robberies. (Govt.'s Mot. in Opp'n, Ex. 2 at 4–5.) Two search warrants were applied for and granted on May 8, 2018, authorizing the release of the same type of information from the same carriers called for by the first search warrant and authorizing the search of the motor vehicle that

3

Defendant had operated on the evening of the arrest. (Govt.'s Mot. in Opp'n, Ex. 2; Ex. 3.)

Defendant also challenges the remaining four search warrants, which authorized various searches and seizures related to the alleged robberies. (Govt.'s Mot. in Opp'n, Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9.)

In a thorough and well-reasoned R&R, Magistrate Judge Bowbeer recommended that Defendant's Motion to Suppress be denied. (R&R at 1.) After Defendant failed to file a timely objection, this Court adopted the R&R and denied Defendant's Motion to Suppress on December 11, 2018. (Dec. 11, 2018 Order [Doc. No. 27].) However, on December 12, 2018, Defendant sought permission to file a late objection. (Mot. for Extension of Time to File [Doc. No. 29].) In response, the Court extended the deadline for objections and vacated its December 11, 2018 order. (Dec. 13, 2018 Order [Doc. No. 30].)

## II. Analysis

### A. Standard of Review

Upon issuance of an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-cv-1958 (JRT/RLE), 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). Then, the district court will review *de novo* those portions of the R&R to which an objection is made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3).

### B. Challenged Search Warrants

#### 1. Legal Standard

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

When challenging a probable cause determination, "a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Even in the presence of probable cause, a search may also violate the Fourth Amendment if conducted pursuant to a search warrant that is not sufficiently definite. *United States v. Kail*, 804 F.2d 441, 444–45 (8th Cir. 2011). "The degree of specificity required in applying the particularity requirement is flexible and may vary depending on the circumstances and the types of items involved." *Id.* at 445 (internal quotation marks

omitted). In other words, the particularity requirement is met if the description of things being sought is "as specific as the circumstances and nature of activity under investigation permit." *United States v. Martin*, 866 F.2d 972, 977 (8th Cir. 1989) (internal citation omitted).

However, search warrants are presumptively valid. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005).

### 2. Probable Cause and Particularity

Defendant argues that the first three search warrants lacked a substantial basis for each judge to conclude that probable cause existed. (Def.'s Mot. to Suppress at 2.) Specifically, Defendant contends that because "it [was] unknown whether a phone was used by the suspect before or after the robbery," there was no nexus between the information sought and the alleged criminal activity. (*Id.* at 2, 4.)

However, after a careful review of the four-corners of the search warrant affidavits, the Court agrees with the magistrate judge that probable cause existed to issue the warrants. For example, Sergeant Waite explained that after twenty-three years on the job, he "is aware through training and experience that individuals frequently call and/or text message other co-conspirators regarding criminal activity during and/or after an event has occurred." (Govt.'s Mem. in Opp'n, Ex. 1 at 5; Ex. 2 at 5; Ex. 3 at 5.) In addition, he pointed out the ubiquitous nature of cellular phones and how "[w]hen cell phones make or receive a call, SMS, or use data, the cell phone will register with a cellular tower in the geographical area of the crime." (*Id.*)

Under the circumstances, there was a fair probability that data from the cellular

6

towers in the area of the crimes would include cellular data related to the individual responsible for the robberies being investigated, and that by cross-referencing the data, that individual could be identified. (R&R at 10.)

Second, Defendant contends that the warrant applications were indefinite because "[t]he three warrants allowed law enforcement to identify the location of hundreds if not thousands of cell phone users on specific days during specific time frames." (Def.'s Mot. to Suppress at 2.)

Yet, the search warrant applications seek information that is constrained—both geographically and temporally—to the robberies under investigation. (Govt.'s Mot. in Opp'n, Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1.) These constraints are justified by the nature of the investigation—multiple robberies in different geographic areas, carried out by an individual utilizing the same *modus operandi*. (R&R at 11.) The search warrants were not directed at general searches of the data from those towers, nor did they seek data from towers not geographically relevant to the locations of the robberies during the pertinent time periods. (*Id.*)

Lastly, in response to the Government's argument challenging Defendant's standing, Defendant argues that he does have standing because he had a reasonable expectation of privacy in the cellular tower data at issue. (Def.'s Mot. to Suppress at 2–3.) The Court need to reach this issue. The Court agrees with the magistrate judge that, even assuming that Defendant did have a reasonable expectation of privacy and therefore does have standing to bring his challenge, this Court need not resolve that issue as Defendant's Motion to Suppress fails because the search warrants for the cellular tower

7

data are supported by probable cause and sufficiently definite. (R&R at 9.)

### 3. *Leon* Good-Faith Exception

"Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (internal citation omitted). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted). That said, *Leon* does not apply when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* at 547 (internal quotation marks omitted). The Supreme Court has opined "that the threshold for establishing [that *Leon* does not apply] is a high one, and it should be." *Id.*

Defendants argues that *Leon* should not apply because the search warrant applications were too broad generally, did not connect a suspect to the alleged robbery, and otherwise "failed to draw a connection of illegal activity to a specific cell phone." (Def.'s Mot. to Suppress at 1–2, 4.) Thus, Defendant contends, no reasonable law enforcement officer could have concluded that the challenged warrants were valid. (*Id.*)

However, the Court agrees with the magistrate judge that there is nothing to suggest that the search warrant affidavits objectively lack sufficient probable cause nor is it obvious that the search warrants themselves are unconstitutionally indefinite. Three

judges reviewed the applications and concluded that it was appropriate to grant the requested search warrants. (Govt.'s Mot. in Opp'n, Ex. 1; Ex. 2; Ex. 3.) Moreover, other reasonable law enforcement officers "have used this method to develop leads in . . . robbery and assault cases where the specific M.O. has matched." (Govt.'s Mot. in Opp'n, Ex. 2 at 6; Ex. 3 at 6.) Likewise, other courts have also concluded that there is nothing per se violative of the Fourth Amendment about seeking cellular tower data for similar purposes to those at issue here. *See, e.g.*, *In re Application of the U.S.A. for an Order Pursuant to 18 U.S.C. 2703(c), 2703(d) Directing AT & T, Sprint/Nextel, T-Mobile, Metro PCS, Verizon Wireless*, 42 F. Supp. 3d 511, 515–16 (S.D.N.Y. 2014) (finding that the government could seek historical cell site data pursuant to the Stored Communications Act); *In re Search of Cellular Telephone Towers*, 945 F. Supp. 2d 769, 771 (S.D. Tex. 2013) (finding that probable cause supported search warrant applications for cell towers data).

Accordingly, the *Leon* good-faith exception applies because it was reasonable for the law enforcement officers to rely in good faith on the judge's determination that there was probable cause to issue the search warrants.

### 4. Remaining Warrants

Defendant challenges the remaining warrants on the ground that the results of these searches and seizures are "the tainted fruit of illegal search and seizures that occurred during the execution of the first three warrants." (Def.'s Mot. to Suppress at 4.) But suppressing evidence as "fruit of the poisonous tree assumes the existence of a constitutional violation." *Oregon v. Elstad*, 470 U.S. 298, 305 (1985) (internal quotation

9

marks omitted). And, having concluded that Defendant's Fourth Amendment rights were not violated in the procurement of the three cellular tower search warrants or in the manner in which the searches were executed, suppression of evidence under the remaining search warrants is also not warranted. (R&R at 14.) As a result, Defendant's Motion to Suppress in this respect is denied.

**III.  Conclusion**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections [Doc. No. 28] are **OVERRULED**;

2. Magistrate Judge Bowbeer's R&R [Doc. No. 26] is **ADOPTED** in its entirety; and

3. Defendant's Motion to Suppress Search and Seizure of Items [Doc. No. 18] is **DENIED**.

Dated: January 25, 2019                                  s/ Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States District Judge